UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SAMANTHA S.,

                Plaintiff,

     -v-                              3:18-CV-553

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                         OF COUNSEL:

PIERRE PIERRE LAW, P.C.           EDDY PIERRE PIERRE, ESQ.
Attorneys for Plaintiff
211 East 43rd Street, Suite 608
New York, NY 10017

OFFICE OF REGIONAL GENERAL COUNSEL    LUCY WEILBRENNER, ESQ.
   SOCIAL SECURITY ADMINISTRATION      Special Ass't United States Attorney
   REGION II
Attorneys for Defendant
26 Federal Plaza, Room 3904
New York, NY 10019

DAVID N. HURD
United States District Judge

<u>**MEMORANDUM–DECISION and ORDER**</u>

## I. **INTRODUCTION**

     Plaintiff Samantha S.[1] ("Samantha" or "plaintiff") brings this action seeking review of

defendant Commissioner of Social Security's ("Commissioner" or "defendant") final decision

---

[1] In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be used in this opinion.

denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Both parties have filed their briefs, and defendant has filed the Administrative Record on Appeal. The motions will be considered on the basis of these submissions without oral argument.[2]

## II. **BACKGROUND**

On December 31, 2014, Samantha filed applications for SSI and DIB alleging that her asthma, fibromyalgia, mental illness, and kidney disease rendered her disabled beginning on July 17, 2013. R. at 82-105.[3] Plaintiff's consolidated claim was initially denied on March 12, 2015. *Id*. at 106-13.

At Samantha's request, a video hearing was held before Administrative Law Judge ("ALJ") Jeremy G. Eldred on March 28, 2017. R. at 53-76. Plaintiff, represented by attorney Michael Bonsor, appeared and testified. *Id*. The ALJ also heard testimony from Vocational Expert ("VE") Josiah L. Pearson. *Id*.

Thereafter, the ALJ issued a written decision denying Samantha's application for benefits through May 3, 2017, the date of his written decision. R. at 38-47. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. *Id*. at 1-4.

## III. **DISCUSSION**

### A. **Standard of Review**

A court's review of the Commissioner's final decision is limited to determining whether

---

[2] Pursuant to General Order No. 18, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

[3] Citations to "R." refer to the Administrative Record. Dkt. No. 9.

the decision is supported by substantial evidence and the correct legal standards were applied.  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).  "Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

　　"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

　　If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive.  *See Williams*, 859 F.2d at 258.  Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

　　However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### B.  Disability Determination—The Five-Step Evaluation Process

　　The Act defines "disability" as the "inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits. *Id*. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d); *see also id.* Pt. 404, Subpt. P, App. 1. If the claimant's impairment or combination of impairments

meets one or more of the Listings, then the claimant is "presumptively disabled." *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to these first four steps is on the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five. *Perez*, 77 F.3d at 46. This step requires the ALJ to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. *Perez*, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2).

"[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity." *Poupore*, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

## C. ALJ's Decision

Applying the five-step disability determination, the ALJ found that: (1) Samantha had not engaged in substantial gainful activity since July 17, 2013, the alleged onset date;

(2) plaintiff's fibromyalgia, multilevel degenerative changes of the lumbar spine, headaches, polycystic kidney disease, kidney stones, post-traumatic stress disorder, major depressive disorder, and pain disorder were severe impairments within the meaning of the Regulations; and that (3) these impairments, whether considered individually or in combination, did not meet or equal any of the Listings.  R. at 40-42.

At step four, the ALJ determined that Samantha's impairments caused both exertional and non-exertional limitations.  R. at 42-45.  In particular, the ALJ found that plaintiff retained the RFC to:

> perform light work, . . . except she can sit for a total of no more than six hours in an eight-hour workday and must stand for five minutes after sitting for a period of two hours, can stand for a total of no more than three hours in an eight-hour workday, can walk for a total of no more than three hours in an eight-hour workday, can only perform simple, routine work tasks, is limited to making simple work-related decisions, and is limited to occasional interaction with supervisors, co-workers, or the public.

*Id*. at 42.

The ALJ determined that these limitations precluded Samantha from performing her past relevant work as a child monitor, a cashier/checker, a hospital cleaner, a construction worker, a housekeeper/cleaner, and as a customer service clerk.  R. at 45.  However, the ALJ found that plaintiff's RFC, considered together with her age and education, still allowed her to perform the job duties of a "mail clerk," a "photocopy machine operator," and a "marker."  *Id*. at 46.

Because these jobs fit in with Samantha's assessed limitations and were present in sufficient numbers in the national economy, the ALJ concluded plaintiff was not disabled during the relevant time period.  R. at 46-47.  Accordingly, the ALJ denied plaintiff's

application for benefits. *Id*.

### D. **Samantha's Appeal**

Samantha contends the ALJ improperly weighed the medical opinion evidence and incorrectly evaluated her hearing testimony, reaching an RFC that misstates the scope and extent of her limitations. Plaintiff further argues that the hypothetical posed to the VE was incomplete because it failed to account for her need to use a cane. Finally, plaintiff claims the Appeals Council failed to consider certain "new and material" evidence she submitted in connection with her challenge to the ALJ's written decision.

### 1. **The RFC**

"Where, as here, the ALJ finds at step two that a claimant has one or more 'severe' impairments but determines at step three that the claimant is not presumptively disabled, the ALJ must go on to make an RFC finding, which is an assessment of 'what an individual can still do despite his or her limitations.'" *Tammy Lynn B. v. Comm'r of Soc. Sec.*, –F. Supp. 3d–, 2019 WL 2498877, at *3 (N.D.N.Y. June 17, 2019) (quoting *Cox v. Astrue*, 993 F. Supp. 2d 169, 183 (N.D.N.Y. 2012) (McAvoy, J.)).

"In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and symptomatology], including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Tammy Lynn B.*, 2019 WL 2498877, at *3 (quoting *Adams v. Colvin*, 2016 WL 3566859, at *3 (N.D.N.Y. June 24, 2016)).

"The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." *Rivera v. Comm'r of*

*Soc. Sec.*, 368 F. Supp. 3d 626 (S.D.N.Y. 2019) (citations omitted).

"In practice, administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." *Adams*, 2016 WL 3566859, at *3 (quoting *Casey v. Comm'r of Soc. Sec.*, 2015 WL 5512602, at *10 (N.D.N.Y. Sept. 15, 2015) (Suddaby, J.)).

### a. <u>The Medical Evidence</u>

Samantha argues the ALJ: (1) failed to satisfactorily explain why he did not afford more weight to a January 23, 2017 medical source statement completed by Angela Crawford, Ph.D., plaintiff's treating therapist; (2) mis-characterized and mis-weighed the opinions of Rekha Patel, M.D., plaintiff's primary care provider; and (3) inaccurately summarized the February 13, 2017 medical source statement completed by Thomas J. Oven, M.D., plaintiff's treating rheumatologist.

Broadly speaking, the Regulations divide evidence from a claimant's medical sources into three categories: (1) treating; (2) acceptable; and (3) other.[4] The most important of these is the treating source category, which includes a claimant's "own physician, psychologist, or other acceptable medical source" who has provided "medical treatment or evaluation and who has, or has had an ongoing treatment relationship" with the claimant. *Martin v. Colvin*, 2016 WL 1383507, at *5 (N.D.N.Y. Apr. 7, 2016) (citation omitted).

---

[4] On January 18, 2017, the Social Security Administration made revisions to the rules regarding the evaluation of medical evidence. Because plaintiff's claim was filed before March 27, 2017, the prior policies govern here. *See, e.g.*, *Daniels on behalf of D.M.G. v. Comm'r of Soc. Sec.*, 2018 WL 5019746, at *6 n.13 (S.D.N.Y. Sept. 30, 2018) (explaining the elimination of the treating physician rule and related changes); *Perez v. Comm'r of Soc. Sec.*, 2019 WL 359980, at *6-*7 nn. 6-8 (E.D.N.Y. Jan. 29, 2019) (explaining various changes effective to claims filed after March 27, 2017).

The opinion of a treating source regarding the nature and severity of a claimant's impairments is entitled to *controlling* weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Martin*, 2016 WL 1383507, at *5 (quoting *Cobbins v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 126, 134 (N.D.N.Y. 2012)).

However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Martin*, 2016 WL 1383507, at *5 (quoting *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)). And when a treating source's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts, an ALJ may afford it less than controlling weight. *Id*. (citation omitted). In fact, a treating physician's opinion may also be properly discounted, or even entirely rejected, when: (1) it is internally inconsistent; (2) the source lacks underlying expertise; (3) the opinion is brief, conclusory, or unsupported by clinical findings; or even where (4) it "appears overly sympathetic such that objective impartiality is doubtful and goal-oriented advocacy reasonably is suspected." *Id*. (citation omitted).

Where an ALJ decides to afford a treating source's opinion less than controlling weight, he must still consider various factors in determining how much weight, if any, to give the opinion, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in claimant's particular case. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Beyond this so-called "treating physician rule," the same six factors set forth above apply with equal force to the evaluation of the remaining categories of medical evidence recognized by the Regulations: the "acceptable" and "other" sources mentioned earlier. *Martin*, 2016 WL 1383507, at *5. The former, those deemed "acceptable" sources, include "licensed physicians (medical or osteopathic doctors, psychologists, optometrists, podiatrists, and speech-language pathologists." *Id*. (citation omitted). The latter category, deemed "other" in Administration parlance, are "ancillary providers such as nurse practitioners, physician assistants, licensed clinical social workers, and therapists." *Id*.

Importantly, only evidence from a "treating" or "acceptable" source can be relied upon to establish the *existence* of a medically determinable impairment. *Martin*, 2016 WL 1383507, at *5 (citation omitted). However, evidence from all three sources "can be considered when determining severity of impairments and how they affect individuals' ability to function." *Id*.

Finally, while the six-factor analysis set forth above applies in all cases except where "controlling" weight is given to a treating physician's opinion, an ALJ need not mechanically recite these factors as long as the record reflects a proper application of the substance of the rule. *See, e.g.*, *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (summary order) (noting that an ALJ need not expressly recite each factor so long as it is "clear from the record as a whole that the ALJ properly considered" them).

Upon review of Samantha's arguments in light of this body of governing law, they must be rejected. As an initial matter, the tenor of plaintiff's briefing suggests it was incumbent on the ALJ to adopt a combination of physical and mental limitations that track one or more of the medical opinions in the record.

But as this court and others have repeatedly stated, "there is no requirement that the ALJ pick one RFC and use that particular evaluation in its entirety." *Kitka v. Comm'r of Soc. Sec.*, 2016 WL 825258, at \*9 (N.D.N.Y. Feb. 9, 2016) (Report & Recommendation) (Baxter, M.J.), *adopted by* 2016 WL 865301 (N.D.N.Y. 2, 2016).

Rather, "it is the ALJ's responsibility to 'choose between properly submitted medical opinions and other competent evidence to piece together an overall [RFC] assessment.'" *Robles v. Colvin*, 2016 WL 814926, at \*4 (N.D.N.Y. Feb. 29, 2016) (quoting *Crofoot v. Comm'r of Soc. Sec.*, 2013 WL 5493550, at \*8 (N.D.N.Y. 2013)).

### i. **Dr. Crawford**

In this case, Samantha faults the ALJ for assigning "little weight" to Dr. Crawford's January 23, 2017 opinion, which assessed "marked" limitations in her ability to function in a number of important mental areas. R. at 622-26. The ALJ partially discounted Dr. Crawford's opinion because, in his view, her assessments were "based in large part on the claimant's 'self-reports' about her problems, rather than examination findings." *Id*. at 45.

In addition, the ALJ concluded that Samantha had more recently testified during the benefits hearing that she was not currently taking any psychotropic medications, and that this testimony was confirmed in reviewing more recent treatment records from Dr. Crawford. R. at 45. Taken together, the ALJ concluded that these factors tended to undermine Dr. Crawford's conclusions about more severe limitations in plaintiff's mental functioning. *Id*.

Samantha attacks the ALJ's conclusions by claiming it was improper for him to discount Dr. Crawford's opinion merely because it relied on plaintiff's self-reported

symptomatology. Pl.'s Mem., Dkt. No. 10, 15.[5]  As plaintiff points out, "[i]nterviewing a patient and assessing her subjective self-reported symptoms can be an acceptable diagnostic technique when the condition complained of involves a substantial subjective component." *Parikh v. Astrue*, 2008 WL 597190, at *6 (E.D.N.Y. Mar. 2, 2008).

But it is true too that "[r]egardless of any inherent subjectivity in the field of psychiatry, a doctor cannot simply report what his patient says and re-package it as an opinion." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 529 (6th Cir. 2016) (unpublished disposition); *see also Merkley v. Comm'r of Soc. Sec.*, 2017 WL 4512448, at *4 (N.D.N.Y. Oct. 10, 2017) (Suddaby, J.) ("A source's reliance on a claimant's subjective reports rather than the medical evidence constitutes a good reason for affording less weight to a medical opinion, even from a treating physician.").

A review of the ALJ's written decision confirms that he reviewed the record and struck a permissible balance between these two guideposts.  As the Commissioner points out, the ALJ properly relied on objective mental health evidence in the record, including treatment notes, and other mental health opinion evidence in the record, including the opinion of consultative examiner Mary Ann Moore, Psy.D, in partially rejecting Dr. Crawford's more severe findings.  *See* Def.'s Mem., Dkt. No. 12, 9-11 (collecting contrary evidence and findings); *see also* R. at 44-45.

In sum, the ALJ did not err in evaluating and then partially discounting Dr. Crawford's statements and findings.  *Doty v. Comm'r of Soc. Sec.*, 2017 WL 4621630, at *6 (N.D.N.Y. Oct. 13, 2017) (Suddaby, J.) ("It is well-established that the ALJ has both the ability and the

---

[5]  Pagination corresponds with CM/ECF.

responsibility to resolve conflicts in the evidence[.]").

### ii. **Dr. Patel**

The same is true of the ALJ's treatment of Dr. Patel's opinions. *See* R. at 44. On April 8, 2015, Dr. Patel, Samantha's primary care provider, submitted a letter recounting plaintiff's various impairments and opining that plaintiff was unable to work as a result of their combined impact. *Id*. at 376.

Then, on November 18, 2015, Dr. Patel completed a disability impairment questionnaire in which she opined that Samantha suffered from various limitations in her ability to lift and carry and to sit and stand, and that these and other limitations rendered plaintiff unable to perform in a competitive work environment. R. at 546-50.

The ALJ assigned "less weight" to these conclusions because, in his view, Dr. Patel was a general practitioner, not a specialist in the treatment of fibromyalgia. R. at 44. Further, the ALJ concluded that Dr. Patel's opinion about plaintiff's inability to work "involve[d] an issue reserved to the [ALJ]." *Id*. Finally, the ALJ noted that Dr. Patel's conclusions relied heavily on the opinions and treatment notes of other medical professionals. *Id*.

Samantha contends it was improper for the ALJ to cite Dr. Patel's lack of specialization in rheumatology as a basis on which to afford her opinion less than controlling weight. But as the Commissioner points out, Dr. Patel's November 2015 questionnaire repeatedly advises the reader to "refer to specialist notes" for more information about the nature and extent of plaintiff's impairments. R. at 546-49.

And this makes sense, because as the ALJ recognized, Samantha's fibromyalgia—a notoriously difficult disease to properly evaluate—was her "primary physical impairment." R. at 44; *see also Monique Danielle W. v. Comm'r of Soc. Sec.*, 2019 WL 2358529, at *4

(N.D.N.Y. June 4, 2019) (discussing analytical challenges associated with a fibromyalgia diagnosis in the disability context).

Under those circumstances, it is hard to fault the ALJ (or Dr. Patel, for that matter) for relying more heavily on the medical opinion of Dr. Oven, Samantha's treating rheumatologist and a specialist in the relevant subject matter. R. at 44. In fact, Dr. Patel herself explicitly suggested to plaintiff's attorney that this was the appropriate course of action. *Id*. at 27.

### iii. <u>Dr. Oven</u>

In turn, Samantha goes on to argue more generally that the ALJ inaccurately summarized certain portions of Dr. Oven's opinion and misunderstood others. *See* Pl.'s Mem. at 20-22. For instance, plaintiff argues that Dr. Oven's opinion that plaintiff could "stand and/or walk" *really* means "either one individually or both together but not *each* individually." *Id*. at 21 (emphasis in original).[6] Plaintiff also argues the ALJ's RFC failed to explicitly include plaintiff's need for a cane. *Id*. at 23; *see also* R. at 357.

These various arguments are rejected. A review of the ALJ's narrative discussion of the medical evidence in the record reveals that he discharged his duty in accordance with the governing Regulations. Accordingly, there is no basis to disturb his findings. *See, e.g.*, *Tammy Lynn B.*, 2019 WL 2498877, at *6 ("Plaintiff's disagreement with the ultimate factual determinations that the ALJ drew from this record evidence is not a basis for remand.").

### iv. <u>Asthma</u>

Finally, Samantha suggests the ALJ failed to account for limitations imposed by her asthma, an impairment which the ALJ found to be non-severe. Pl.'s Mem. at 24. In plaintiff's

---

[6] Plaintiff argues that Dr. Oven "amended" his opinion in a letter submitted to the Appeals Council following the ALJ's written decision. That argument is addressed later in this opinion.

view, the ALJ's failure to include environmental restrictions merely because the condition is well-controlled by medication is the same as a doctor telling a diabetic patient that they may "freely consume sugar" as long as they have their insulin handy. *Id*.

To be sure, an "RFC determination must account for limitations imposed by both severe and nonsevere impairments." *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order); *see also Cardoza v. Comm'r of Soc. Sec.*, 353 F. Supp. 3d 267, 280 (S.D.N.Y. 2019) ("[T]he ALJ must take into account the cumulative effects of ailments, including those that are non-severe.").

Importantly, though, a "non-severe" impairment is, by definition, a condition which causes only a "slight abnormality" which would have "no more than a minimal effect on an individual's ability to work." *Cardoza*, 353 F. Supp. 3d at 280. So it is hard to argue that the ALJ erred in failing to include environmental limitations in the RFC without first claiming that an underlying condition (such as asthma) was sufficiently "severe" to impose more than a "minimal effect" on a plaintiff's ability to work.

This is especially so where, as here, the jobs identified by the VE and adopted by the ALJ do not require exposure to environmental conditions known to be challenging to asthmatics. Def.'s Mem. at 15-16. In sum, any failure to include environmental restrictions under these circumstances is insufficient to warrant remand. *See, e.g.*, *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 590 (W.D.N.Y. 2018) (finding same and collecting cases).

### 2. Subjective Testimony

Samantha also argues the ALJ improperly assessed the credibility of her hearing testimony. Specifically, plaintiff contends the ALJ misstated her testimony about how often she drives her boyfriend to work and what she meant when she said she sometimes spends

part of the day "caring" for her young children. Pl.'s Mem. at 26-27.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Adams*, 2016 WL 3566859, at *7 (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).

"Where the record evidence does not fully support a claimant's testimony, the ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms." *Adams*, 2016 WL 3566859, at *7 (citations omitted). "First, the ALJ must determine whether, based on the objective medical evidence, a claimant's medical impairments could reasonably be expected to produce the pain or other symptoms alleged." *Id*. "Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work." *Id*.

"At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. *Adams*, 2016 WL 3566859, at *7 (citations omitted).

"As before, an ALJ's '[f]ailure to expressly consider every factor set forth in the

regulations is not grounds for remand where the reasons for the ALJ's determination of credibility are sufficiently specific to conclude that he considered the entire evidentiary record in arriving at his determination.'" *Adams*, 2016 WL 3566859, at *8 (quoting *Camille v. Colvin*, 104 F. Supp. 3d 329, 345 (W.D.N.Y. 2015).

"In other words, an ALJ 'must discuss the relationship between the plaintiff's medically determinable impairment, the plaintiff's reported symptoms, his conclusions regarding the plaintiff's functioning, and why the plaintiff's reported symptoms are or are not consistent with the evidence in the record.'" *Adams*, 2016 WL 3566859, at *8 (quoting *Deeley v. Astrue*, 2011 WL 454505, at *5 (N.D.N.Y. Feb. 3, 2011) (Scullin, J.)).

Upon review, this argument is also rejected. In essence, Samantha argues that the ALJ adopted an outcome-oriented approach to evaluating plaintiff's testimony, misstating it to the extent necessary "to justify his adverse credibility finding." Pl.'s Mem. at 27. But a review of his written decision reveals that is an inexact characterization of the ALJ's decision. Contrary to plaintiff's assertion, the ALJ accurately summarized plaintiff's testimony, juxtaposing her claims of severe, disabling limitations with other findings by the various medical providers in the record. R. at 43-45; *see also Alexandrea R. R. v. Berryhill*, 2019 WL 2269854, at *9 (N.D.N.Y. May 28, 2019) ("The ALJ is often looking to see whether a claimant's testimony during the benefits hearing is in line with statements they have made to their own treatment providers at some point in the past.").

Of course, none of the ALJ's findings, considered individually, provide a sufficient basis on which to reject Samantha's testimony of more severe limitations and more disabling pain. But considered together, they tend to cast doubt on the notion that plaintiff is as severely limited as she claimed to be in her testimony. For instance, whether plaintiff wants

to admit it or not, she did testify that she is the *only* driver in the household, that she often drives her boyfriend to work, and that she often helps her children in the mornings.  R. at 43, 65.  The mere fact the ALJ did not go on to explicitly state in his written decision that plaintiff also testified she is sometimes unable to make the drive or that she is sometimes unhelpful to her children in the morning does not itself demonstrate that the ALJ mis-characterized or misunderstood her testimony.

In sum, "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Pollino v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 428, 439 (W.D.N.Y. 2019) (citation omitted).  This kind of deference to the ALJ makes sense—as the only participant in the disability appellate process who has the "opportunity to observe witnesses' demeanor, candor, fairness, intelligence and manner of testifying," the ALJ is "best-positioned to make accurate credibility determinations."  *Id*.  Accordingly, this argument will be rejected.

### B.  The Appeals Council

Finally, Samantha claims the Appeals Council ("AC") failed to consider certain new and material evidence she submitted following the ALJ's issuance of his unfavorable written decision.  Specifically, plaintiff contends the AC should not have summarily dismissed:  (1) Dr. Oven's June 13 2017 letter; and (2) a mental impairment questionnaire completed on September 20, 2017 by David Stang, Psy.D.

As a general matter, "[t]he Appeals Council is obligated to consider 'new and material' evidence that 'relates to the period on or before the date of the administrative law judge hearing decision.'" *Patterson v. Colvin*, 24 F. Supp. 3d 356, 372 (S.D.N.Y. 2014) (quoting 20 C.F.R. § 404.970(b)).  New evidence is "material" if it is:  "(1) relevant to the claimant's

condition during the time period for which benefits were denied and (2) probative." *Stratton v. Colvin*, 51 F. Supp. 3d 212, 218 (N.D.N.Y. 2014) (quoting *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004)).

However, "[t]he Second Circuit [has] clearly stated that when new evidence is submitted to the AC and the AC denies review, the reviewing court's role is to review the entire administrative record, including the new evidence, and determine whether substantial evidence supported the Commissioner's final decision." *Canady v. Comm'r of Soc. Sec.*, 2017 WL 5496071, at *10 (N.D.N.Y. Oct. 4, 2017) (Carter, M.J.) (Report & Recommendation), *adopted by* 2017 WL 5484663 (N.D.N.Y. Nov. 14, 2017) (Suddaby, J.).

Under those circumstances, the question becomes "whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require the AC to take the case." *Canady*, 2017 WL 5496071, at *11; *see also Patterson*, 24 F. Supp. 3d at 373 ("[T]his requirement has been interpreted to mean that there must be "'a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.'").

That requirement is not met in this case. First, the Commissioner correctly notes that Dr. Oven's June 13, 2017 letter is a "reconsideration" of his previous opinion, based not on additional medical evidence or more treatment but on "further reflection." R. at 29. Notably, this further reflection occurred *after* plaintiff's attorney alerted him to the fact that his patient's application for benefits had been denied by the ALJ based, in some part, on Dr. Oven's previous conclusions about her ability to stand for three hours at a time. *Id.*; *cf. Labonne v. Astrue*, 341 F. App'x 220, 225 (7th Cir. 2009) (unpublished disposition) ("[A]n ALJ may reject a treating physician's opinion over doubts about the physician's impartiality, particularly since

treating physicians can be overly sympathetic to their patients' disability claims.").

Second, Dr. Stang met Samantha and evaluated her *after* the date of the ALJ's written decision denying her benefits. *Compare* R. at 17-25 (September 20, 2017 evaluation), *with id*. at 38-47 (May 3, 2017 written decision). Whatever Dr. Stang might have concluded about plaintiff's condition as of the date of his evaluation, he had no prior treatment relationship with plaintiff and therefore it is hard to see how his opinions might permissibly relate to the prior, discrete period of time for which plaintiff was denied benefits by the ALJ. *See, e.g.*, *Patterson*, 24 F. Supp. 3d at 374 (concluding same where opinion was rendered "approximately four months after the ALJ's decision was issued"). Accordingly, this argument will also be rejected.

## IV. <u>CONCLUSION</u>

The ALJ applied the appropriate legal standards and supported his written decision with substantial evidence in the record. Samantha's additional submissions to the AC are not the kind of "new and material" evidence sufficient to cast doubt on the ALJ's denial of benefits and therefore remand is not required.

Even so, an ALJ is only empowered to deny benefits to a claimant for a discrete time period. "A second application starts the process anew and potentially permits the applicant to obtain benefits through it for this new period of time." *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 932 (6th Cir. 2018) (Sutton, J.) ("The individual may bring a separate application that claims a later disability-onset date.").

For instance, "[a]dditional evidence showing a deterioration in a claimant's condition significantly after the date of the Commissioner's final decision . . . may be grounds for a new application for benefits." *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997); *see also*

*Casiano v. Apfel*, 39 F. Supp. 2d 326, 332 (S.D.N.Y. 1999) ("Casiano may, however, file a new application for SSI benefits with the Social Security Administration based upon her treating physician's opinions that she is currently unable to work."), *aff'd*, 205 F.3d 1322 (2d Cir. 2000). On the other hand, an applicant "should not have high expectations about success if the second filing mimics the first one and the individual has not reached any new age (or other) threshold to obtain benefits." *Earley*, 893 F.3d 933.

In light of Dr. Stang's evaluation and Dr. Oven's letter, Samantha might consider following up with those two sources and possibly others who might be in a position to provide further opinions as to the precise limitations currently caused by her various impairments. Armed with this and other new evidence, plaintiff might be able to show a deterioration in her condition that warrants the filing of a new application.

Therefore, it is

ORDERED that

1. Samantha's motion for judgment on the pleading is DENIED;

2. The Commissioner's motion for judgment on the pleadings is GRANTED;

3. The Commissioner's decision is AFFIRMED; and

4. Samantha's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated: July 9, 2019
Utica, New York.